NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ERNIE FRANCISCO CIENFUEGOS, *Appellant*.

No. 1 CA-CR 19-0365
FILED 6-23-2020

Appeal from the Superior Court in Maricopa County
No. CR 2018-119484-001
The Honorable Julie Ann Mata, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Ernie Francisco Cienfuegos appeals his conviction and sentence for criminal damage, a class 1 misdemeanor. He argues the superior court erred by: (1) admitting evidence of a pre-trial identification, and (2) denying his motions for judgment of acquittal. For the following reasons, we affirm.

## BACKGROUND

¶2        While making deliveries, the victim, a professional truck driver, stopped his vehicle at a red light. When the light turned green and the victim began driving into the intersection, someone stepped out into the street in front of his truck and threw a rock through his windshield.

¶3        Immediately, the victim dialed 911. With the rock-thrower still in sight, the victim described the perpetrator to the emergency operator—a thin Hispanic man, in his late teens or early 20s, wearing light shoes, a backward hat, a dark shirt, and red athletic shorts.

¶4        Moments later, a police officer responded to the scene and observed a man who matched the reported description holding a rock in his right hand. When the officer ordered the suspect to drop the rock, he ran away. Although the officer chased after the suspect, he eventually lost sight of him in a townhouse complex. Before long, however, the officer spotted the suspect in the passenger seat of a car leaving the complex. While the suspect was wearing different clothing, the officer recognized his facial features, including a goatee. The officer stopped the car and arrested the suspect, Cienfuegos.

¶5        Shortly thereafter, other police officers brought the victim to the complex to conduct a one-on-one showup identification.[1]

---

[1]        The term "showup" refers to "[a] police procedure in which a suspect is shown singly to a witness for identification, rather than as part of a lineup." *Showup*, Black's Law Dictionary (11th ed. 2019).

Notwithstanding the suspect's changed clothing, the victim positively identified Cienfuegos as the man who threw the rock through his windshield. The next day, the victim's employer replaced the truck's windshield at an expense of $391.16.

¶6            The State charged Cienfuegos with one count of criminal damage, a class 6 felony, and two counts of misdemeanor criminal damage. The superior court later reduced the felony charge to a misdemeanor and dismissed one of the two original misdemeanor charges.

¶7            Cienfuegos waived his right to a trial by jury and the superior court held a bench trial. After a *Dessureault* hearing, the court admitted the State's evidence of the victim's pretrial identification of Cienfuegos. Defense counsel, in turn, called three eyewitnesses, each of whom testified that Cienfuegos was not the man who threw the rock. The court found Cienfuegos guilty of one count of criminal damage and not guilty on the remaining count. At sentencing, the court placed Cienfuegos on one year of supervised probation. Cienfuegos timely appealed.

## DISCUSSION

### I.      Evidence of Pretrial Identification

¶8            Arguing the showup was unduly suggestive, Cienfuegos contends the superior court erred by admitting evidence of the victim's pretrial identification. "We review the fairness and reliability of a challenged identification for clear abuse of discretion." *State v. Lehr*, 201 Ariz. 509, 520, ¶ 46 (2002).

¶9            A "criminal defendant's due process rights include the right to a fair identification procedure." *State v. Leyvas*, 221 Ariz. 181, 185, ¶ 10 (App. 2009). "It is the likelihood of misidentification which violates a defendant's right to due process." *Lehr*, 201 Ariz. at 520, ¶ 46 (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). Nonetheless, an "overly suggestive" pretrial identification procedure does not necessarily "bar the admission of an identification." *Lehr*, 201 Ariz. at 520, ¶ 46. "Instead, the question is whether the identification is reliable in spite of any suggestiveness." *Id*. To evaluate reliability, the court considers several factors: (1) the opportunity of the witness to view the criminal at the time of the offense, (2) the witness' degree of attention, (3) the accuracy of the witness' description of the criminal, (4) the level of certainty the witness demonstrates "at the confrontation," and (5) the "time between the crime and the confrontation." *Id*. at 521, ¶ 48.

¶10         Applying the first factor, the victim had three opportunities to view Cienfuegos during the incident: (1) while stopped at a red light; (2) when Cienfuegos stepped in front of the victim's truck and threw the rock through the windshield; and (3) while on the phone with the 911 operator, including at least two times when the victim "looked at [the man] again" while responding to the operator's questions.

¶11         Concerning the second factor, Cienfuegos argues the victim's degree of attention was "divided by . . . other tasks," including parking his truck after the windshield was broken and making the 911 call. However, the victim testified that he paid careful attention to pedestrians while at the stoplight to avoid hitting them, and he specifically recalled seeing Cienfuegos before he threw the rock. And after the rock throwing, the victim's attention was directly focused on Cienfuegos, particularly while answering the emergency operator's questions about the physical description of the suspect. *See State v. Alvarez*, 145 Ariz. 370, 372 (1985) ("[W]here a victim rivets her attention upon her attacker, the reliability of her subsequent identification of him is enhanced.").

¶12         Turning to the third factor, the accuracy of the prior identification, Cienfuegos points to two discrepancies: (1) the victim described the rock thrower as a dark-skinned black or Hispanic person, whereas he is a light-skinned Hispanic person; and (2) the victim described the rock thrower as a thin Hispanic person wearing red shorts and a dark shirt and he was arrested and later identified while wearing a red shirt. Contrary to Cienfuegos' contention, these inconsistencies go to the weight of the evidence, not its admissibility. A defendant is entitled to attack such inconsistencies on cross-examination. *State v. Moore*, 222 Ariz. 1, 9, ¶ 29 (2009). Because Cienfuegos had the opportunity to raise the inconsistencies during cross-examination to impeach the victim, the inconsistencies do not establish a basis for relief on appeal.

¶13         With respect to the fourth factor, Cienfuegos contends that a police officer tainted the identification process, thereby undermining the level of certainty the victim demonstrated at the showup. When he arrived at the showup, the victim said, "[t]hat's him." To confirm that the victim identified Cienfuegos, a police officer asked the victim whether he was referring to the man in the red shirt. Although Cienfuegos asserts that the officer's clarifying question tainted the victim's certainty, the victim testified that he immediately identified Cienfuegos at the scene based on his facial features and stature, and avowed he was certain that Cienfuegos was the man who threw the rock through his windshield.

¶14        Finally, Cienfuegos argues that a significant delay between the victim's observation and the identification undermines the reliability of the identification, the fifth factor. Cienfuegos asserts that "it was approximately 30 minutes between the time that [the victim] last observed the perpetrator and when he identified [Cienfuegos]," which was too removed to be reliable. But Arizona courts have found that identifications made hours or even days after the crime weigh in favor of reliability. *See, e.g.*, *State v. Canez*, 202 Ariz. 133, 150, ¶ 48 (2002) (finding identification made within two days of the crime weighed in favor of reliability), *superseded on other grounds*, *State v. Valenzuela*, 239 Ariz. 299 (2016); *State v. Dixon*, 153 Ariz. 151, 154–55 (1987) (concluding there was no error in admitting identification where the "time between the crime and the identification was but a few hours"); *State v. Bracy*, 145 Ariz. 520, 531–32 (1985) (finding an identification made "fifty-three days after the crime" was not unreliable, reasoning "[w]hether the length of time between the crime and the pretrial identification is too long depends upon the facts of each case").

¶15        In sum, there is ample evidence in the record supporting each of the five factors. To the extent there may have been inconsistencies in the descriptions or other weaknesses in the identification, Cienfuegos had the opportunity to bring them to the superior court's attention during cross-examination of the fact witnesses. *See Alvarez*, 145 Ariz. at 372 (considering the *Biggers* factors and finding identification reliable without analyzing the accuracy of the witness' prior description); *Bracy*, 145 Ariz. at 531–32 (finding identification reliable despite inconsistencies in descriptions of the criminals). Therefore, the court did not abuse its discretion by finding the victim's identification of Cienfuegos was reliable and admissible.[2]

## II.    Motions for Judgment of Acquittal

¶16        Cienfuegos next argues that the superior court erred by denying his motion for judgments of acquittal. He asserts that no substantial evidence supports the court's denial of his motion.

¶17        We review a superior court's denial of a motion for judgment of acquittal de novo. *See State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). The "relevant question" is "whether, after viewing all the evidence in the light

---

[2]     The State argues that the showup was not unduly suggestive, relieving this court of the responsibility to determine the reliability of the identification. Because reliability is determinative in this case, we need not consider whether the showup was unduly suggestive.

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (emphasis omitted). This Court tests the evidence "against the statutorily required elements of the offense." *State v. Dodd*, 244 Ariz. 182, 185, ¶ 8 (App. 2017) (internal quotation omitted). "A conviction may be sustained on circumstantial evidence alone." *State v. Green*, 111 Ariz. 444, 446 (1975).

¶18        "A person commits criminal damage by . . . [r]ecklessly defacing or damaging property of another person." A.R.S. § 13-1602(A)(1). Criminal damage is a misdemeanor where the damage to property is "more than two hundred fifty dollars but less than one thousand dollars." A.R.S. § 13-1602(B)(5).

¶19        Here, the State presented sufficient evidence to support a finding of each essential element of criminal damage. The victim identified Cienfuegos as the person who damaged his truck. Officer Spencer also identified Cienfuegos as the person he saw holding a rock when he arrived at the scene, and as the person who fled the area immediately thereafter. Finally, the victim testified that his company was invoiced for $391.16 for the repair of the damaged windshield, which supports a finding that property damage fell within the statutory range of $250 to $1000.

¶20        Cienfuegos argues the trial judge "had to ignore the testimony of all three eyewitnesses who clearly said that [Cienfuegos] was not the perpetrator." This testimony does not undermine the superior court's ruling. "The credibility of a witness and the weight and value to be given a witness' testimony are questions exclusively for the [trier of fact]." *State v. Pieck*, 111 Ariz. 318, 320 (1974).

¶21        Viewing the evidence in the light most favorable to the prosecution, substantial evidence in the record supports Cienfuegos' conviction, and the superior court did not err by denying his motions for judgment of acquittal.

**CONCLUSION**

¶22       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA